LADDIE MAILOT, PLAINTIFF, v. PUBLIC SERVICE CO-OR-
DINATED TRANSPORT AND ALBERT THOMAS, DE-
FENDANTS.

Decided September 23, 1931.

For the plaintiff, *John W. McGeehan, Jr.* (*John A. Mc-
Kenna,* of counsel).

For the defendant, *Henry H. Fryling* (*Elmer W. Romine,*
of counsel).

PORTER, C. C. J. This matter comes before me on a rule to
show cause why the verdict in favor of the plaintiff, and
against the defendant company in this case, should not be
set aside on the ground that the same is excessive and against
the weight of the evidence.

The plaintiff was injured on New Year's night, January
1st, 1928, on Washington avenue, Belleville, in a collision
between his automobile and a trolley car of the defendant
company. The plaintiff was traveling in a southerly direc-
tion and the trolley car in a northerly direction.

The plaintiff's contention is that as he arrived at the inter-
section of Washington avenue and Essex street an automobile
suddenly appeared at the right of his car, coming from Essex
street, which caused him to swing to his left in order to
avoid a collision. In so doing he drove upon the north-bound
trolley track, observing as he got there a trolley car approach-
ing at or near Joralemon street, a distance southerly of some
one hundred and thirty-five to one hundred and fifty feet
away, traveling at a fast rate of speed. The motor of the

plaintiff's car stalled as he was in that position, but, while the trolley car was approaching and before it reached the plaintiff, he succeeded in starting the motor in an endeavor to get out of the way, and is not positive whether he succeeded in starting his car, but either while it was at a standstill or was just beginning to move, and while it was still on the north-bound track, the trolley car crashed into his automobile, rendering him unconscious and causing serious physical injuries. He further says that the operator of the trolley car made no attempt to stop and gave no warning of his approach and kept increasing his speed; that as a matter of fact his face was averted; the plaintiff testifying that he did not see the motorman's head "because he had it turned in that little nickel register or counting his money or whatever he was doing."

It develops from other testimony that after the collision the automobile was alongside of the trolley car and near the rear of it. There was no corroboration of the plaintiff's story with respect to the occurrence of the accident. The only witness adduced by the plaintiff, other than himself, was a James Ferraro, whose testimony was simply that he saw a car swerve off to the left of the road onto the trolley tracks on the night in question; that he was driving an automobile toward Newark on Washington avenue, and, after seeing a car swerve, continued on; that he also saw a trolley car crossing Joralemon street; that he did not see the accident but did hear the crash as he was passing Joralemon street. He further said, on cross-examination, that he saw no other automobile at Essex street. He gave no explanation as to what caused the car, assuming it to have been the plaintiff's, to have swerved. He did not go back to the scene of the accident, although he heard the crash. It does not develop that he recognized the plaintiff when he passed and saw him swerve nor when he learned that the plaintiff was in the accident and hurt. He saw the plaintiff during May or June of the summer following the accident, and apparently because of some conversation had then with respect to the accident he was later summoned as a witness.

The charge of negligence is thus based entirely on the testimony of the plaintiff with respect to the manner in which the trolley car was being operated as above described. As against that testimony there is, in my opinion, abundant testimony which entirely outweighs and controverts the plaintiff's version of the accident.

First, the motorman, Mr. DeJong, denies excessive speed; on the contrary, he says that he had stopped at Joralemon street to let on passengers, which is corroborated. He says that he was going slowly, which is corroborated; that he saw the plaintiff's car on the track before the accident; that he rang his gong repeatedly as he approached the plaintiff, which is corroborated; that he was at a standstill, or practically at a standstill, when the collision occurred, which is corroborated. All of the corroboration is from disinterested witnesses, mostly passengers in the trolley car. While it is true that none of them saw the occurrence because of a curtain which hid the motorman and the view ahead of the car, still that fact did not prevent them from hearing the gong and observing the speed and stop of the trolley.

Moreover, the physical facts with respect to the collision, and the position of the trolley car and automobile afterwards, clearly indicate that at least one of the vehicles was going at a high rate of speed. That must be true from the amount of damage caused to the two vehicles, as well as from the fact that either one of the vehicles had traveled nearly the length of the trolley car after the accident.

The testimony indicates to me that it was the automobile which was traveling at the time of the impact and that it sideswiped the trolley car, while the trolley car was either at a standstill or practically so. The physical facts, therefore, in my opinion, corroborate the defendant's story and disprove the plaintiff's story that the plaintiff was in fact at a standstill, or practically so, at the time of the collision.

The driver of the car which it is said came out of Essex street and caused the plaintiff to swerve left onto the trolley track, Albert Thomas, was also made a party defendant to the suit. His name was known, he was served with process.

He did not appear in court, he was not a witness, nor was any explanation forthcoming as to his absence.

The jury found a verdict of "no cause of action" in favor of the defendant Thomas. To have done so indicated its disbelief in the plaintiff's story about Thomas forcing him to the left of the road onto the trolley track. Thus its verdict under the circumstances is inconsistent and illogical and further indicates to me that it reached its conclusions without properly weighing the testimony.

The fact as alleged that Thomas forced the plaintiff across the road is an important and outstanding primary cause of the accident. And yet according to an investigator employed by the defendant company, Mr. Gardner, the plaintiff did not acquaint him with that version of the occurrence when he first told him the facts. On the contrary, Mr. Gardner testified that the plaintiff at that interview told him that he did not know what caused him to go to the left of the road. Mr. Gardner made a written memorandum of that interview at the time which was produced at the trial and marked in evidence.

When the verdict was rendered it seemed clear to me that it was so clearly against the weight of the testimony as to be the result of mistake, prejudice, passion or sympathy, and that it would be my duty to set it aside. After hearing able argument, reading carefully prepared briefs, and reading the testimony, I am confirmed in that opinion.

The rule will be made absolute.